UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANNA KONSTANTINOVA,** | Civ. No. 2:21-cv-12795 (WJM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **ALEXANDER GARBUZOV, IGOR MYASNIKOV, AUTO PRODUCT GROUP, INC.** | |
| **Defendants.** | |

In this action for fraud, breach of contract, and violations of the Trafficking Victims Protection Act, Defendant Igor Myasnikov ("Defendant" or "Myasnikov") moves to dismiss the First Amended Complaint against him pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. ECF No. 18. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Defendant's motion to dismiss is **granted**. The claims against Myasnikov are **dismissed without prejudice.**

## I.     Background[1]

Plaintiff Anna Konstantinova ("Plaintiff") was residing in Moscow and working as a public relations agent for the Russian Federation when she first met Defendant Alexander Garbuzov ("Garbuzov") in 2006 or 2007. First Amended Compl., ¶¶ 15, 49, 56, ECF No. 1-1. At that time, Garbuzov, an American citizen living in Moscow, told Plaintiff that he was divorced. *Id.* at ¶¶ 15-16. On November 6, 2008, Plaintiff married Garbuzov in a ceremony in Las Vegas. *Id.* at ¶¶ 51-52. Unbeknownst to Plaintiff, Garbuzov stated in the Nevada Affidavit of Application for Marriage License that he had divorced Elana Popova ("Popova") on April 30, 2008, *id.* at ¶¶ 20, 53, but did not actually divorce Popova until the following month on December 11, 2008, *id.* at ¶ 22.

Plaintiff and Garbuzov lived in Russia from November 2008 until September 2011 when Plaintiff moved to the United States. *Id.* at ¶¶ 23-24. In January 2012, Garbuzov

---

[1] The Court accepts as true the facts alleged in the First Amended Complaint, ECF No. 1-1, for purposes of this Opinion.

filed an I-130 Immigration Petition on Plaintiff's behalf. *Id.* at ¶ 25. In support of that Petition, Garbuzov submitted an altered marriage license incorrectly stating the date of marriage as November 6, 2009 instead of November 6, 2008. *Id.* at ¶¶ 26-27.

Believing that her marriage to Garbuzov was valid, Plaintiff worked for Garbuzov's company, Auto Product Group ("APG"), in the management, public relations, marketing, and product development departments. *Id.* at ¶¶ 29-30. Garbuzov and Myasknikov are each 50% shareholders of APG. *Id.* at ¶¶ 9, 11. According to Plaintiff, Garbuzov agreed to pay Plaintiff a salary. *Id.* at ¶ 32. Additionally, she claims that she and Defendants Garbuzov, Myasknikov, and APG (collectively "Defendants") orally agreed that as compensation for her work, she would be given half of Garbuzov's share of APG. *Id.* at ¶ 113. Plaintiff helped develop Defendants' business working for 15-16 hour days, 5 days per week, but she was not paid for over six years. *Id.* at ¶¶ 32-33.

After Plaintiff filed an action for divorce, on July 17, 2017, she became aware of Garbuzov's purported fraud when Garbuzov's counsel informed her that her marriage had been void *ab initio. Id.* at ¶ 5. When Plaintiff and Garbuzov separated, Myasnikov terminated Plaintiff's employment at APG "in retaliation." *Id.* at ¶ 37.

On or about December 30, 2019, Plaintiff instituted a New Jersey state court action alleging state law claims against Garbuzov and others for defrauding her into thinking that her marriage to Garbuzov was valid and based on that fraud, inducing her to work for APG without receiving any compensation. ECF No. 1-1, Exh B. On May 20, 2021, Plaintiff filed a First Amended Complaint adding Myasnikov as a defendant as well as asserting violations of federal anti-trafficking laws. ECF No. 1-1, Exh. A. Defendants Garbuzov and APG removed this action to federal court on June 21, 2021. ECF No. 1.

Counts I and II of the First Amended Complaint contain allegations against only Garbuzov: 1) fraud in the inducement and misrepresentation; and 2) common law fraud. Plaintiff asserts the remaining seven counts, Counts III – IX,[2] against all three Defendants: 3) unjust enrichment; 4) trafficking with respect to peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. §§ 1590, 1595; 5) benefitting financially from trafficking in violation of 18 U.S.C. §§ 1593A, 1595; 6) attempt to violate 18 U.S.C. §§ 1584, 1589, 1590, 1594, 1595; 7) conspiracy to violate 18 U.S.C. §§ 1584, 1589, 1590, 1594, 1595; 8) quantum meruit; and 9) breach of contract. Plaintiff seeks $892,541.10 from Defendants for six years of unpaid services, *id.* at ¶ 36, in addition to not less than $2 million for her share of joint marital assets, *id.* at ¶ 45.

Defendant Myasnikov now moves to dismiss Counts III – IX of the First Amended Complaint against him. Each of the seven counts that Defendant Myasnikov's motion to

---

[2] What should be Count IX is mislabeled in the First Amended Complaint as Count "XI."

dismiss seeks to dismiss will be addressed in turn. The trafficking, forced labor, and involuntary servitude counts (Counts IV – VII) will be addressed first before turning to the state law claims of unjust enrichment (Count III), quantum meruit (Count VIII), and breach of contract (Count IX).

## II.   Discussion

### A.   Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.,* 542 F.3d 59, 64 (3d Cir. 2008). This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). That is, although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). While "[t]he plausibility standard is not akin to a probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Tellabs, Inc. v. Makar Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). If matters outside the pleading are considered, the 12(b)(6) motion to dismiss is converted to a motion for summary judgment. *Pryor v. NCAA,* 288 F.3d 548, 560 (citing 62 Fed. Proc., L.Ed. § 62:508). *See e.g., Rose v. Bartle,* 871 F.2d 331, n.3 (3d Cir. 1989) (noting affidavit filed in opposition to motions to dismiss "clearly comprised a matter outside the pleading which, if not excluded by the court, required the court to convert the pending motions to dismiss into motions for summary judgment.").

Accordingly, the Court will not consider Plaintiff's affidavit, Decl. of Anna Konstantinova, ECF No. 26-2, submitted in opposition to Myasnikov's motion. *See Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 290 (3d Cir. 2014) ("Generally, a court considering a motion to dismiss under Rule 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency.").

### B. Counts IV – IX (Trafficking Victims Protection Reauthorization Act)

Section 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), Pub. L. No. 108-193, 117 Stat. 2875 (2003), and its subsequent amendment, William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, PL 110-457, 122 Stat. 5044 (2008), § 221, provide a civil right of action for trafficking victims to recover damages and reasonable attorneys' fees from perpetrators and "from those who knowingly benefit, financially or otherwise, from a violation of TVPRA." *Griffin v. Alamo*, 2016 WL 7391046, at *2 (W.D. Ark. Dec. 21, 2016). Section 1595 provides:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C.A. § 1595(a).

### 1. Count IV - 18 U.S.C. §§ 1590, 1595

Seeking civil remedy under 18 U.S.C. § 1595, Plaintiff contends that Defendants violated § 1590(a) by knowingly bringing her to the United States for the purpose of involuntary servitude and forced labor in contravention of 18 U.S.C. §§ 1589(a) and (b), 1584(a), and 1592. Section 1590 makes it unlawful to "knowingly recruit[], harbor[], transport[], provide[], or obtain[] by any means, any person for labor or services in violation of this chapter." 18 U.S.C. § 1590(a).

### a. Forced Labor - 18 U.S.C. § 1589

Civil liability under 18 U.S.C. § 1589 for forced labor requires a finding, by a preponderance of the evidence, that the defendant "knowingly provide[d] or obtain[ed] the labor or services of a person" by any of the following means:

4

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, ...

18 U.S.C. § 1589(a); *see Guobadia v. Irowa*, 103 F. Supp. 3d 325, 333 (E.D.N.Y. 2015). Section (b) makes it unlawful to "knowingly benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means." 18 U.S.C. § 1589(b).

"Serious harm" is defined as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C.A. § 1589(c)(2).

In this case, Plaintiff's First Amended Complaint contains no allegation of threats of physical, psychological, or reputational harm or force by Myasnikov. Plaintiff newly raises in her opposition brief a charge that Garbuzov used physical abuse and controlled her finances to force her to continue to work for Defendants. Because this is not a claim set forth in Plaintiff's pleading, it cannot be considered on a motion to dismiss[3] and in any event, is an allegation against Garbuzov alone. Indeed, the only facts pled against Myasnikov are: he failed to compensate her for work she performed for APG, *see* First Amended Compl., ¶¶ 77-78; he co-owned APG with Defendant Garbuzov, *id.* at ¶ 30; and  he terminated Plaintiff's employment "in retaliation" when she and Garbuzov separated, *id.* at ¶ 37. Based on these allegations, Plaintiff theorizes that she was forced to continue working by means of the financial "serious harm" of severe underpayment or withholding of wages. However, while serious financial harm may have been the *result* of Plaintiff's uncompensated labor, Plaintiff's current claims in no way suggest that Myasnikov used serious financial harm, force, physical restraint, abuse of law or legal process, or threats as a *means* to force Plaintiff to work for APG. In fact, Plaintiff's

---

[3] *See* discussion *supra*, II.A.

allegation of force is belied by her contention that the reason she worked for APG was because she believed she was married to Garbuzov, *id.* at ¶ 29, that she did so without pay "in reliance on [Garbuzov's] marital status," *id.* at ¶ 69, and was thereby defrauded by Garbuzov into providing "free labor," *id.* at ¶ 72.

Even accepting Plaintiff's allegations as true and giving them the benefit of every favorable inference to be drawn therefrom, Plaintiff has failed to state a plausible claim against Myasnikov for violation of 18 U.S.C. § 1589.

b. <u>Involuntary Servitude – 18 U.S.C. § 1584</u>

Section 1584(a) subjects to punishment anyone who "knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term, or brings within the United States any person so held." 18 U.S.C.A. § 1584. The Supreme Court has held that the language and legislative history of § 1584 indicate that "involuntary servitude" is borrowed from the Thirteenth Amendment and "should be limited to cases involving the compulsion of services by the use or threatened use of physical or legal coercion." *United States v. Kozminski,* 487 U.S. 931, 948 (1988); *see also* 22 U.S.C. § 7102(6) (defining "involuntary servitude" as "a condition of servitude induced by means of (A) any scheme, plan, or pattern intended to cause a person to believe that, if the person did not enter into or continue in such a condition, that person or another person would suffer serious harm or physical restraint; or (B) the abuse or threatened abuse of the legal process.") The Court recognized that a broader interpretation of "involuntary servitude" would "appear to criminalize a broad range of day-to-day activity" such as a parent's coercion of an adult child "into working in the family business by threatening withdrawal of affection." *Id.* at 949. "'Modern day examples of involuntary servitude have been limited to labor camps, isolated religious sects, or forced confinement.'" *Dillard v. Morris Cty. Prosecutor's Off.,* 2020 WL 4932527, at *5 (D.N.J. Aug. 24, 2020) (citing *Steirer by Steirer v. Bethlehem Area Sch. Dist.,* 987 F.2d 989, 999 (3d Cir. 1993), abrogated on other grounds by *Troster v. Pa. State Dep't of Corr.,* 65 F.3d 1086, 1087 (3d Cir. 1995)).

Here, Plaintiff has not alleged that Myasnikov has knowingly or willfully held Plaintiff to "involuntary servitude," that is, obtained forced labor from Plaintiff through the use or threatened use of physical or legal coercion. Plaintiff has not pled any facts to support a claim for relief against Myasnikov for violation of 18 U.S.C. § 1584(a).

c. <u>Destroying Immigration Documents – 18 U.S.C. § 1592</u>

Finally, Plaintiff alleges in Count IV that Myasnikov violated § 1592. Section 1592 makes it unlawful to "knowingly destroy[], conceal[], remove[], confiscate[], or possess[] any actual or purported passport or other immigration document" of another person in the course of violating or intending to violate various other sections in the 2008

amendment to the TVPRA. 18 U.S.C. § 1592(a). Plaintiff's First Amended Complaint does not set forth any facts whatsoever that would support a claim that Defendant Myasnikov had anything to do with Plaintiff's immigration documents in violation of § 1592.

In sum, Plaintiff has failed to sufficiently plead facts that establish a facially plausible claim for relief against Myasnikov under § 1590(a) for having knowingly recruited, transported, harbored, provided and/or obtained her, bringing her to the United States for the purpose of involuntary servitude and forced labor in violation of 18 U.S.C. §§ 1589(a) and (b), 1584(a), or 1592. Count IV is **dismissed without prejudice** against Defendant Myasnikov.

> 2. Count V -- Benefitting Financially from Trafficking in Violation of 18 U.S.C. § 1593A, 1595

Plaintiff contends that Myasnikov, as a co-owner of APG, was aware of her employment and that she was not being paid. Based on those factual allegations, Plaintiff concludes that Myasnikov violated section 1593A. First Amended Compl., ¶ 91. Section 1593A states:

> Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of this chapter, knowing or in reckless disregard of the fact that the venture has engaged in such violation, shall be fined under this title or imprisoned in the same manner as a completed violation of such section.

18 U.S.C.A. § 1593A. While it might be reasonable to infer that Myasnikov knowingly benefitted from Plaintiff's unpaid employment, Plaintiff has not pled that Myasnikov knew that Plaintiff's marriage was void let alone that he participated in a scheme to mislead Plaintiff to believe her marriage was valid in order to coerce free labor in violation of trafficking laws. *See* First Amended Compl., ¶ 74 (alleging only Garbuzov and APG coerced Plaintiff to work without pay or benefits). Thus, Plaintiff has not alleged any facts from which to infer that Myasnikov participated in a venture to engage in trafficking or that he benefitted from it knowing or in reckless disregard of the venture's purported violation of trafficking laws. *See* discussion *supra,* II.B.1. Accordingly, Count V against Myasnikov is **dismissed without prejudice**.

> 3. Count VI -- Attempt to Violate 18 U.S.C. § 1584, 1589, 1590, 1594, 1595 and Count VII -- Conspiracy to Violate 18 U.S.C. § 1584, 1589, 1590, 1594, 1595

Plaintiff seeks relief under 18 U.S.C. § 1595(a) claiming that Defendants contravened § 1594(a) and (b) by attempting and conspiring to bring her to the United

States for the purpose of involuntary servitude and forced labor in violation of sections 1584, 1589 and trafficking in violation of section 1590. Section 1594 provides:

> (a) Whoever attempts to violate section 1581, 1583, 1584, 1589, 1590, or 1591 shall be punishable in the same manner as a completed violation of that section.

> (b) Whoever conspires with another to violate section 1581, 1583, 1589, 1590, or 1592 shall be punished in the same manner as a completed violation of such section.

18 U.S.C.A. § 1594. Although Plaintiff is correct that § 1595(a) authorizes trafficking victims to seek damages from third parties who knowingly benefit from the trafficking, the right to bring suit does not relieve Plaintiff of her burden to plead facts from which the Court can reasonably infer that there was in fact an agreement or an attempt to violate the prohibition on forced labor and involuntary servitude. Plaintiff's contention that Myasnikov attempted and conspired to violate §§ 1584, 1589, 1590, or 1595 cannot succeed as a matter of law given the Court's determination that Plaintiff has not stated a claim for violation of the predicate charges. *See* discussion *supra*, II.B.1. Accordingly, Counts VI and VII against Myasnikov are **dismissed without prejudice**.

## C.   Count III (Unjust Enrichment) and Count VIII – Quantum Meruit

Unjust enrichment and quantum meruit are equitable remedies grounded in quasi-contract doctrine. *Cajoeco LLC v. Bensi Enterprises, LLC*, 2021 WL 2472382 at *12 (N.J. App. Div. June 17, 2021); *Starkey, Kelly, Blaney & White v. Est. of Nicolaysen*, 172 N.J. 60, 68 (2002). "Generally, to claim unjust enrichment, a plaintiff must allege that '(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it.'" *In re Ford Motor Co. E–350 Van Prods. Liab. Litig.*, 2008 WL 4126264, at *21 (D.N.J. Sept. 3, 2008) (quoting *In re K–Dur Antitrust Litig.*, 338 F.Supp.2d 517, 544 (D.N.J.2004)); *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). Likewise, quantum meruit "'rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.'" *Starkey*, 172 N.J. at 68 (citing *Weichert Co. Realtors*, 128 N.J. at 437). A quantum meruit theory requires a plaintiff to establish the following elements: (1) performance of services in good faith; (2) acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefor; and (4) the reasonable value of the services. *Id.*

To advance her unjust enrichment and quantum meruit claims, Plaintiff alleges that she performed her tasks in good faith, *id.* at ¶ 77, that at the cost of her time and efforts, Defendants accepted and received the benefit of her work as a public relations executive and marketing manager without compensating her. *See* First Amended Compl.,

¶¶ 78, 107-109. Plaintiff concludes that it would be unjust to allow Defendants to reap the benefit of Plaintiff's labors without paying for it, that she expected compensation for her services, *id.* ¶ 77, and that $892,541.10 is the reasonable value of her services, *id.* ¶ 79.

Even if Plaintiff has sufficiently pled a claim for unjust enrichment and quantum meruit, Myasnikov argues that such claims are not properly brought against him because there is no allegation that he was her direct employer. Rather, because Plaintiff was an employee of APG, Myasnikov contends that any claim of non-payment for work is proper only against APG. The Court agrees.

In New Jersey, "'a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *Richard A. Pulaski Const. Co. v. Air Frame Hangars, Inc.*, 195 N.J. 457, 472 (2008) (citing *State, Dept. of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 500 (1983) (citations omitted)). "Veil piercing is an equitable remedy whereby the court disregards the corporate existence and holds the individual principals liable for the corporation's debts." *Sean Wood, L.L.C. v. Hegarty Grp., Inc.*, 422 N.J. Super. 500, 517, (App. Div. 2011) (citing *In re Blatstein*, 192 F.3d 88, 100 (3d Cir.1999); *Bd. of Trs. v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir.2002)). "'[T]he party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity.'" *Richard A. Pulaski Const. Co.*, 195 N.J. at 472 (citing *Tung v. Briant Park Homes, Inc.*, 287 N.J. Super. 232, 240 (App. Div.1996)).

Courts will not pierce the corporate veil except in cases of "fraud, injustice, or the like." *Id.* (citations and internal quotations omitted); *Cajoeco LLC v. Bensi Enterprises, LLC*, 2021 WL 2472382, at *15 (N.J. Super. Ct. App. Div. June 17, 2021). "Personal liability may be imposed upon a controlling stockholder of a close corporation where the controlling stockholder disregards the corporate form and utilizes the corporation as a vehicle for committing equitable or legal fraud." *Marascio v. Campanella*, 298 N.J. Super. 491, 502 (App. Div. 1997) (citing *Walensky v. Jonathan Royce Intern.*, 264 N.J. Super. 276, 283 (App. Div.), certif. denied, 134 N.J. 480 (1993)). "An individual may be liable for corporate obligations if he was using the corporation as his alter ego and abusing the corporate form in order to advance his personal interests." *Sean Wood, L.L.C.*, 422 N.J. Super. at 517 (citing *Tsai v. Buildings by Jamie, Inc. (In re Buildings by Jamie)*, 230 B.R. 36, 42 (Bankr. D.N.J.1998).

In this matter, nothing in the First Amended Complaint suggests that Myasnikov was using APG as his alter ego and disregarding or abusing the corporate form in order to advance his person interests or to use APG as a mean to commit equitable or legal fraud. Drawing all reasonable inferences in Plaintiff's favor, the First Amended Complaint contains no facts to support a plausible claim that Myasnikov misused the corporate form to unfairly allow APG to avoid paying Plaintiff a salary. Nonetheless, Plaintiff posits that

because APG is a closely held corporation with only two shareholders, it would be patently unfair to allow Myasnikov to hide behind a corporate veil after benefitting from Plaintiff's work. This contention alone does not suffice to prove that the Court should disregard corporate form to allow Myasnikov and APG to be treated as one for liability purposes. *See Fields v. Thompson Printing Co., Inc.,* 363 F.3d 259 (3d Cir. 2004) (finding lower court's imposition of personal liability against corporate shareholder and officer for breach of contract, unjust enrichment, and quantum meruit claims to be improper in light of plaintiff's failure to plead or prove bad faith).

Count III for unjust enrichment and Count IV for quantum meruit against Defendant Myasnikov are **dismissed without prejudice.**

D. Count IX – Breach of Contract

To state a claim for breach of contract under New Jersey law, a plaintiff must allege: (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing from that breach; and (4) that the party stating the claim performed its own contractual obligations. *Frederico v. Home Depot,* 507 F.3d 188, 203 (3d Cir. 2007).

Plaintiff contends that she and Defendants entered into an oral agreement in which she was to receive half of Garbuzov's share of APG as compensation for her services. First Amended Compl., ¶ 113. Since Myasnikov is one of the Defendants, the Court will accept as true for purposes of this motion that he was a party to the oral agreement. Nevertheless, as discussed above, Plaintiff has not met her burden to show that piercing of the corporate veil as to Myasnikov is warranted. *See Fields,* 363 F.3d at 274 ("a corporate officer or director is not personally liable for ... inducing the breach of a corporate contract, provided the officer or director acts in good faith and for the benefit of the corporation." (citing *Law of Corp. Officers and Dir.,* § 3:30 (2004)); *see also Hammer v. Hair Systems, Inc.,* 2009 WL 1686820, at *5 (App. Div. June 18, 2009) (holding that corporate officers who believe they acted in corporation's best interest and within scope of his or her authority "do not incur personal liability for causing the corporation to breach a contract." (citing *Fields,* 363 F.2d at 274)); *cf., Guzzi v. Morano,* 2013 WL 4042511, at *8-9 (E.D. Pa. Aug. 8, 2013) (finding shareholder not subject to personal liability under Pennsylvania law for breach of oral agreement to provide one-third of partnership in company where plaintiff failed to support piercing of corporate veil).

Here, Plaintiff has not averred that Myasnikov, in his individual capacity, promised Plaintiff half of Garbuzov's share in APG, or that he acted in bad faith and not in the best interest of APG. Thus, Plaintiff has not established a prima facie claim for personal liability against Myasnikov for breach of contract. Count IX is **dismissed without prejudice.**

E. Plaintiff's Request for Leave to Amend

Plaintiff may file within 30 days a Second Amended Complaint that cures the deficiencies discussed herein and complies with all applicable Local and Civil Rules of Federal Procedure.[4]

**III.    Conclusion**

For the reasons noted above, Defendant Myasnikov's motion to dismiss is **granted**. Counts III – IX of Plaintiff's First Amended Complaint are **dismissed without prejudice** as to Defendant Myasnikov.

_/s/ William J. Martini_
**WILLIAM J. MARTINI, U.S.D.J.**

Date: December 13, 2021

---

[4] To the extent that Plaintiff's claims against Defendant Garbuzov may be equally deficient for the reasons discussed herein, Plaintiff is permitted to cure those defects in the Second Amended Complaint.