## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNA KONSTANTINOVA<br><br>Plaintiff,<br><br>- against-<br><br>ALEXANDER GARBUZOV, IGOR MYASNIKOV, and AUTO PRODICT GROUP, INC.<br><br>Defendants. | Civil Action No.<br>21-Civ-12795 (WJM)(LDW)<br><br>**REVISED SECOND AMENDED COMPLAINT** |

Plaintiff, ANNA KONSTANTINOVA (hereinafter referred to as "Plaintiff"), by and through undersigned counsel, alleges upon information and belief the following against Defendants ALEXANDER GARBUZOV, IGOR MYASNIKOV and AUTO PRODUCT GROUP, INC. (collectively referred to as "Defendants").

## PRELIMINARY STATEMENT

1.    Plaintiff brings this action to recover damages and equitable and injunctive relief necessitated by Defendants' unlawful actions and omissions, including inter alia fraud in the inducement and misrepresentation, common law fraud, breach of contract, and violations of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (the "TVPA").

2.    While the instant case is not an archetypical trafficking action the allegations

12

plausibly establish that Garbuzov's conduct violated 18 USC §§1589 and 1591.

3.     Defendant Alexander Garbuzov led Plaintiff Anna Konstantinova into believing that she was entering into a bona fide marriage with him. Meanwhile, Alexander Garbuzov married Anna Konstantinova while he was already married to Elana Popova, which automatically deemed Plaintiff's purported marriage to defendant void ab initio.

4.     The remedial provision at issue, Section 1595, which permits civil actions for damages under Section 1589 and 1591, requires broad interpretation. *See Peyton v. Rowe,* 391 U.S. 54, 65 (1968) (recognizing "the canon of construction that remedial statutes should be liberally construed"). Section 1595 amended the TVPA for the remedial purpose of "enhancing ... protections of trafficking victims." 18 U.S.C. § 1595 , Pub. L. 108-193, Dec. 19, 2003, 117 Stat. 2878, § 4 (effective Dec. 19, 2003); *see also N.C. Freed Co., Inc. v. Bd. of Governors of Fed. Reserve Sys*., 473 F.2d 1210, 1214 (2d Cir. 1973) ("Since the statute is remedial in nature, its terms must be construed in liberal fashion[.]"); *Sedima, S.P.R.L. v. Imrex Co., Inc.* 473 U.S. 479, 499 (1985).

5.     Plaintiff was defrauded into believing that her marriage to Garbuzov was bona find, not only was Plaintiff exploited sexually, emotionally, and financially by Garbuzov within the marriage, she was also exploited by Defendant Myasnikov. Plaintiff worked for Defendant Alexander Garbuzov's and Defendant Igor Myasnikov's business, Auto Product Group, Inc, Starlube, Petrolube and Tendemco, Inc. she worked upwards of 12 hours per day without compensation or benefits. If Anna Konstantinova knew that she was not married to Defendant Alexander Garbuzov, she would not have lived with and had intimate relations with him, nor would she have devoted her time and energy to

Alexander Garbuzov and Igor Myasnikov's businesses.

6.      At all times, Defendant Alexander Garbuzov and Igor Myasnikov were aware that the marriage was void, hid this fact from Anna Konstantinova in order to take advantage of and exploit her for their own personal gain.

7.      Garbuzov exerted pressure on Plainttiff to continue to perform services for him and Defendants Myasnikov, APG, Petrolube, Starlube and Tendemco, Inc., by withholding her salary, physically abusing her and by controlling her finances. Defendants have severely underpaid Anna Konstantina, withheld her wages, and have caused her to be at Garbuzov's and Mysnikov's mercy financially.

8.      Even, after Konstantinova left the marriage, Defendants have refused to pay her salary or corporate distributions. Garbuzov has refused to divide the asses acquired during the void marriage.

## PARTIES

9.      The cause of action occurred in the State of New Jersey.

10.     Plaintiff Anna Konstantinova is an individual who resides in New York.

11.     Defendant **Alexander Garbuzov** is an individual and resides in New Jersey at the address 124 Knickerbocker Rd. Cresskill, NJ.

12.     Defendant **Igor Myasnikov** is an individual and resides in New York at the address 35 Wes 52nd Street, Apartment 12F, New York, NY 10019.

13.     Defendant **Auto Products Group, Inc**. is a company incorporated in the State of New Jersey.

14.     Defendants Myasnikov and Garbuzov are the sole shareholders of the Auto Products Group, Inc., (hereinafter "APG").

15.    Defendants Myasnikov and Garbuzov also have control over the companies OOO Petrolube (hereinafter "Petrolube"), OOO Starlube ("Starlube"), and Tendemco, Inc. (hereinafter "Tendemco").

16.    Defendants APG, does business through multiple companies, Petrolube, Starlube and Tendemco, which are engaged in exporting automotive lubricant from the United States to Russia.

17.    During Plaintiff's employment Defendants APG, Petrolube, Starlube and Tendemco had common offices, common record keeping, shared bank accounts and equipment, common management, common directors and boards, centralized control of labor relations and personnel, and common ownership and financial control.

## JURISDICTION

18.    This Court has personal jurisdiction over Defendants because each lives and/or transacts business in the State of New Jersey. The Court has Jurisdiction over Defendants Petrolube, Starlube and Tendemco Inc. pursuant to 28 USC §1367.

19.    Venue is proper in this forum because a substantial part of the acts, transactions, and events giving rise to the claims occurred in Bergen County, New Jersey.

20. Jurisdiction is proper in this District as this case involves violations of Federal Law and thus involves federal questions.

## FACTS COMMON TO ALL CAUSES OF ACTION

21.    The Plaintiff met Alexander Garbuzov, on or about 2006, when she was twenty-five (25). At that time, Alexander Garbuzov was an American Citizen who was residing in Moscow, Russia. Anna Konstantinova was a Russian Citizen living in Moscow, Russia.

22.    At that time Plaintiff worked for the Russian Media Group (Russia's Largest Media Holding Company) as the national public relations manager.

12

23. Defendants Garbuzov, pursued a romantic relationship with Plaintiff. Although he was married to Elana Popova in New York, he told Plaintiff that the was divorced. The Plaintiff continued her relationship with him on the basis of his misrepresentation.

24. In furtherance of this fraud, Garbuzov introduced Plaintiff to Ada Borjiana as his ex-wife.

25. Unbeknownst to Plaintiff at the time, Ada Borjiana was not his ex-wife but rather his ex-girlfriend with whom he had a child out of wedlock.

26. Moreover, Garbuzov hid from the Plaintiff that he was married two times before in the United States (Plaintiff doesn't know how many other women Garbuzov is married to in Russia and abroad).

27. Had Plaintiff known that Alexander Garbuzov was still married, she would not have continued to be in a relationship with him.

28.  When Garbuzov proposed to Plaintiff the parties both lived in Russia. Plaintiff wanted to continue to live in Russia and had no intention to move to the United States and wanted to get married in Russia. However, Garbuzov insisted that the couple get married in Las Vegas, Nevada. Garbuzov persuaded Plaintiff to get married there, by misrepresenting that it is a requirement that he must get married in the United States because he is an American Citizen.

29. In fact Garbuzov insisted on getting married in Las Vegas, NV because that State does not require a party to show proof of divorce i.e., a certified divorce decree, prior to issuing a marriage license. Instead, Nevada only requires the parties to submit a sworn affidavit in support of the marriage license and does not require a waiting period to marry.

30. Therefore, since Garbuzov, was already married to Elena Popova, he intended to take advantage of the lax Nevada laws, in order to enter into a sham marriage with Plaintiff by lying on the Affidavit.

31. Plaintiff and Alexander Garbuzov, married on November 6, 2008, in Las Vegas, NV. The wedding party took place in Moscow, Russia.

32. Unbeknownst to Plaintiff, Alexander Garbuzov falsely reported on the Nevada Affidavit of Application for Marriage License that his divorce decree is dated April 30, 2008.

33. Garbuzov is a sophisticated business man, who entered into multiple marriages and divorces prior to meeting Plaintiff therefore he knew that a divorce decree is a formal document that is issued by a Judge. Therefore, when he reported that he was divorced on April 30, 2008, he knew that this was a false statement.

34. On the date of the marriage between Plaintiff and Defendant Garbuzov, Defendant's prior spouse was alive, and the previous marriage of Defendant to Elana Popova was valid and subsisting. Defendant Alexander Garbuzov did not obtain a divorce from Elana Popova until after he was already married to Plaintiff.

35. Igor Myasnikov and his wife, were the only guests at the Nevada wedding. Maysnikov and his wife also served as witnesses to the marriage between the Plaintiff and Garbuzov.

36. After the wedding ceremony, Myasnikov and his wife and Garbuzov and Plaintiff went to a Restaurant where Myasnikov and Garbuzov asked the Plaintiff to leave her job with Russian Media Group, to work for their companies Petrolube, Tendemco, Inc, Auto Products Group, Inc. (which at the time operated as one company). Myasnikov complained about their current marketing and asked Plaintiff her expertise. Myasnikov and Garbuzov offered to give Plainttiff shares in the company, since she was now "family".

37. After the wedding, Plaintiff and Garbuzov continued to live in Russia. The Plaintiff began to work for Myasnikov and Garbuzov par time, and assisted with marketing projects for her companies in Russia and also continued to work at Russian Media Group.

38. On or about June, 2009 she officially began to work for Alex Garbuzov and Igor Myasnikov in their company Petrolube OOO, which is a subsidiary of **Tendemco, Inc.**, a Delaware corporation. Upon information and belief Tendemco, Inc. is owned by Alex Garbuzov and Igor Myasnikov and has no other shareholders.

39. Petrolube OOO imports and exports synthetic oil and lubricants for automobiles and distributes these products in Russia.

40. Alexander Garbuzov and Igor Myasnikov are also sole shareholders of Auto Product Group, Inc., a New Jersey company.

41. Each of these companies, are interrelated and have the same owners and intermingle funds, employ the same staff in the same offices, shared equipment, common record keeping, Common management, common directors and boards.   Centralized control of labor relations and personnel.

42. After September 8, 2009 Garbuzov asked Plaintiff to work at the office full time, where Plaintiff worked 10-12 hours per day. She was responsible for marketing, public relations, and advertisement.

43. Myasnikov and Garbuzov, did not pay Plaintiff a salary. Instead Myasnikov and Garbuzov represented to Plaintiff that she is a shareholder, by virtue of her marriage to Garbuzov, and that no further paperwork is required to entitle her to shares of the company. Further, Myasnikov and Garbuzov represented that she would be entitled to distributions after the company begins to make a profit.

44. On many occasions work with Defendants and their companies involved travel and major corporate events which required extensive planning and organizing. During these events, Plaintiff worked 15-16 hour per day. At all times Igor Mysnikov knew that Plaintiff was

working for the Defendants, without compensation.

45.  Plaintiff was promoted to Public Relations Director of Petrolube, however she was neither given a salary nor any distributions.

46. During this time Defendant Garbuzov was abusive to Plaintiff, he hit her, and was in control of all family finances. He did not give access to Plaintiff to the checking account and she could not even pay for her expenses.

47. Plaintiff complained to Igor Myasnikov, who gave her a company credit card to use for her expenses.

48. Although she was able to pay for some expenses, Plaintiff did not have access to any funds, she was not able to save or invest any money.

49. Due to the success of Plaintiff's marketing and promotional activities, the Defendants business started to grow exponentially,  as such about a year after Plaintiff started to work full time the companies which included, Petrolube, Temdenco, and APG (which functioned as one business), moved the office to a new prestigious location consisting of two floors in a high-tech new office building and the staff grew to over a hundred people.

50. Thereafter, on or about December 1st, 2010, Myasnikov and Garbuzov opened Starlube. Upon information and belief, Starlube is a subsidiary of Petrolube. It operated from Petrolube/APG offices in Moscow, and shared the same staff, intermingle funds with that of Petrolube, APG and Tendemco, Inc. employed the same staff in the same offices, shared equipment, common record keeping, common management, common directors and boards. Centralized control of labor relations and personnel with that of Petrolube, APG and Tendemco, Inc.

51. There exists an intermingling of activity among each of the Defendants entities which

are engaged in a common enterprise with substantial disregard" of the separate corporate forms or serious ambiguity about the manner and capacity in which the corporations and their representatives are acting.

52. Due to Plaintiff's marketing acumen Starlube, also became very successful. In 2012 it was awarded the prestigioustitle of Company of the Year for its work in 2011.

53. Starlube is the exclusive distributor of Texaco products in Russia.

54. From November 2008 until September 2011 Plaintiff and Defendant Garbuzov lived in Moscow, Russia.

55. In 2011 Plaintiff came to the United States for medical treatment.

56. At this time, Garbuzov and Myasnikov decided to invest funds from APG, Starlube, Petrolube, and Tendemco in real estate in the United States.

57. On or about January 11, 2012, Defendant Garbuzov hired an attorney to file an I-130 Immigration Petition for Alien Relative for Anna Konstantinova.

58. In furtherance of his scheme to defraud and to hide the fact of their void marriage from Plaintiff, Defendant Alexander Garbuzov falsified the date of the marriage in support of Anna Konstantinova's I-130 Immigration Petition, and submitted a falsified marriage certificate.

59. The fake marriage certificate submitted in support of the I-130 Petition falsely listed the marriage date as November 6, 2009, instead of the actual date of marriage, which is November 6, 2008.

60. However, the papers given to Plaintiff to sign in support of the I-130 petition contained the correct date of marriage.

61. Alexander Garbuzov knew at all times that the marriage to Plaintiff was void. He changed

the date of marriage from November 6, 2008, to November 6, 2009 in order to enjoy the physical consequences of the marriage, but to avoid the legal consequences of the marriage, i.e. equitable distribution.

62. After Plaintiff finished her medical treatment in the United States she wanted to go back home. She did not have any contacts, of family members in the United Sates. She was completely alone and isolated. However, Myasnikov and Garbuzov asked her to stay in Florida to work for their real estate companies.

63. Similarly, to the scheme in Russia, Defendants Myasnikov and Garbuzov offered her shares in their real estate companies.

64. Plaintiff justifiably relied on Defendants' misrepresentations that her marriage to Garbuzov, entitled her to half of his share in the business, she did not seek further corporate formalities. Garbuzov and Myasnikov led her into a false belief that the marriage was valid.

65. Both Myasnkov and Garbuzov knew that her marriage to Garbuzov was void.

66. At all times, Myasnikov and Garbuzov, disregarded the corporate form by did not follow corporate formalities, fraudulently induced plaintiff into working for the companies without compensation, and intermingledf corporate and personal affairs.

67. For example, Myasnikov and Garbuzov jointly opened several real estate holding companies, using funds from APG/Petrolube/Starlube/ Tendemco, Inc. accounts.

68. Furthermore, Defendant Garbuzov purchased a personal property located at 891 Captiva Drive Hollywood, FL 33019. Garbuzov purchased the property with funds from APG/Petrolube/Starlube/ Tendemco, Inc. accounts.

69. On April 18th, 2013, Igor Myasnikov and Alexander Garbuzov opened a limited liability corporation named 19370 Collins Avenue Vacation LLC. Thereafter, they purchased two

apartments 19370 Collins Avenue, Unit 923 and Unit 1007, Sunny Isles, Florida. The funds used to purchase these apartments were from APG/Petrolube/Starlube/ Tendemco, Inc. accounts.

70. Defendant Myasnikov and Garbuzov purchased a residence in Florida located 18555 Collins Avenue, Unit 2805, Sunny Isles, Florida, currently worth approximately $5,800,000.00, as well as properties at Ocean Reserve, Unit # 1007, 1611, 923, and a property located at 4111 S. Ocean Drive.

71. Myasnikov and Igor also invested money into otherbusiness such as an entertainment business, a yacht business, and a manufacturing business in Russia.

72. Garbuzov controlled all of Plaintiffs' money, Plaintiff had to ask him to make any purchase over a certain preset limit.

73. Even though the U.S. subsidiary, Auto Product Group, purportedly paid Plaintiff a nominal salary for work that she was doing for Starlube and Petrolube. Garbuzov deposited that salary into a joint account over which Garbuzov had full control. Plaintiff never had access to her salary.

74. While in the United States, Plaintiff worked remotely for the Russian companies Starlube and Petrolube and was also managing Myasnikov's and Garbuzov's properties in Florida.

75. While she was in the United States she worked 15-16 hour days, 5 days per week.

76. Garbuzov and Myasnikov never paid her a salary for work she performed in the United States. Instead Igor and Myasnikov told her that her dividends and distributions were being invested in the Florida properties, and businesses and that she has a share in the properties.

77. Garbuzov kept all the debit cards, checks, and credits cards away hidden, he gave Plaintiff

two creditcards and completely controlled her spending. During this time, Garbuzov lived in Russia and he left Plaintiff with no more than ten checks and those were only used with his permission. Garubuzov had full control over all the finances and Plaintiff did not have access to any money.

78. Plaintiff was never presented with any W-2 or any pay-stubs, any and all money that she earned went directly to accounts only accessible by Garbuzov.

79. Garbuzov physically assaulted Plaintiff often while she was in Florida, which made her fear for her life and her children's lives.

80. In 2015, Plaintiff left Garbuzov and moved to New York. Plaintiff contacted Myasnikov who met with her. She asked Myasnikov for her share of the companies. However, he told her that she will never receive anything from Garbuzov. Myasnikov said "if I can give you advice I would tell you not to leave him because you are not going to get anything because you are not really married to him". Thereafter, Myasnikov gave her a check for $4,000.00 and terminated her employment a week thereafter.

81. In late fall of 2015 he notified Plaintiff that he would pay $1,000.00 in child support per month, but would not give Plaintiff her salary nor any interest in the company profits. When Plaintiff refused the offer, Garbuzov beat her and left her with bruises. Plaintiff filed a Temporary Order of Protection in New York Family Court.

82. Upon information and belief, the total value of Plaintiff's share of the parties' joint marital assets if the marriage was valid, would have been upwards of $2,000,000.00.

83. Defendant Alexander Garbuzov has dissipated assets acquired during the purported marriage and has sold off properties and has failed to provide Plaintiff with her share, and has otherwise acted in bad faith.

84. Although Defendants agreed to pay Plaintiff's salary and company distributions, Defendants withheld her salary and distributions.

85. Plaintiff was working 15-16 hour per day, 5 days per weeks for APG, Inc., Starlube and Petrolube and did not get paid for her efforts.

86. Plaintiff helped Defendants develop their businesses by working for Defendant without receiving any compensation or benefits for over six years.

87. Plaintiff has substantially contributed to Defendant Alexander Garbuzov's enhanced earning capacity.

88. As a result of Plaintiff's efforts, Auto Product Group, Starlube and Petrolube began earning higher revenue and benefited directly through her efforts.

89. Upon information and belief, Plaintiff's unpaid services over six years of employment with Auto Products Group, Inc., is at least $892,541.10.

## COUNT I
## FRAUD IN THE INDUCEMENT AND MISREPRESENTATION
### (Against Alexander Garbuzov)

90. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

91. Defendant Alexander Garbuzov induced Plaintiff Anna Konstantinova into entering a sham marriage by intentionally or negligently misrepresenting to Anna Konstantinova that he was single.

92. On or about 2006 Defendant Alexander Garbuzov met Anna Konstantinova. He expressed his romantic interests and represented that he was divorced and currently single.

93. At that time Alexander Garbuzov knew or should have known that he was married to Elana Popova.

94. Garbuzov intentionally misrepresented his marital status to induce Anna Konstantinova to date him, marry him, have sexual relations with him, and work for his companies.

95. Plaintiff Anna Konstantinova justifiably relied on Garbuzov's representations and married Defendant Garbuzov in a ceremony in Las Vegas on November 6th, 2008.

96. Unbeknownst to Plaintiff, Alexander Garbuzov lied on the Nevada Affidavit of Application for Marriage License by stating that his date of divorce was April 30, 2008.

97. November 6th, 2008 Alexander Garbuzov was married to Elana Popova.

98. Plaintiff would never agree to live with, share her life with, and work for Garbuzov had she known that their marriage was void.

99. Additionally, in reliance on Defendant Garbuzov's misrepresentations, Plaintiff left her family and a lucrative career in Moscow, Russia as a Public Relations Agent where she worked for the Russian Federation, to work for Garbuzov and Auto Product Group, Inc., Petrolube and Starlube and subsidiary companies as mentioned above, where she did not receive salary or benefits.

100.    During the course of their relationship, Garbuzov obtained under false and fraudulent representations, free labor and services from Plaintiff, Plaintiff has been denied her spousal rights of equitable distribution, Plaintiff has been damaged as a result of Garbuzov's fraudulent and deceitful acts in an amount to be determined at trial but not less than $2,892,541.10.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and granting the following relief:

1)    For compensatory, consequential, and punitive damages and interest;

2)    For attorney's fees and costs of suit; and

3) For such other relief as the Court may deem appropriate in the circumstances.

**COUNT II**
**COMMON LAW FRAUD**
**(Against Alexander Garbuzov)**

101. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

102. As described above, Defendant Alexander Garbuzov made knowingly false statements concerning material facts to the Plaintiffs, namely that he was divorced and single when he met and married Anna Konstantinova. Each of the above statements was material to Plaintiff in continuing to live with Defendant and to work for Defendant Alexander Garbuzov and Auto Product Group with no salary or benefits.

103. Defendant knew that his representations were false and intended that the Plaintiff rely upon these representations and Plaintiff to be induced by them to enter into a marriage, continue to be married, and to work for Alexander Garbuzov without a salary and benefits. Plaintiffs relied upon these representations and have been damaged.

104. On or about December 16th, 2008 New York Supreme Court Kings County granted Alexander Garbuzov and Elana Popova a Judgment of Divorce.

105. Upon information and belief Alexander Garbuzov was served with a copy of the Judgement of divorce by January 16th, 2009 or shortly thereafter.

106. In furtherance of the marriage fraud, Defendant Alexander Garbuzov hid from Plaintiff the December 16th, 2008 Judgment of Divorce and the fact that he was still married when he married Plaintiff Anna Konstantinova.

107. On or about September 2011, Anna Konsantinova traveled to the United States to

12

give birth to the parties' child.

108.    Plaintiff asked Garbuzov to file an I-130 Immigration Petition on her behalf, on the basis of their marriage.

109.    Unbeknownst to Plaintiff Defendant Alexander Garbuzov falsified the date of the marriage to the Government. Garbuzov falsely submitted an altered marriage license in support of the I-130 Immigration Petition that contained the wrong date of marriage.

110.     The I-130 petition was granted as a result of the falsely submitted document, which further lulled Plaintiff into a false sense of belief that the parties marriage was valid.

111.    Plaintiff would never agree to continue to live with Garbuzov had she known that they were not married.

112.    Additionally, Plaintiff worked without pay for Garbuzov's company Auto Product Group, Inc., Starlube, Perolube and various Florida companies in reliance on the Party's marital status.

113.    Garbuzov intended to defraud Plaintiff to obtain the benefits of living with Plaintiff, to obtain free labor on behalf of himself and Auto Products Groupm Inc., and to avoid equitable distribution in the event of a divorce.

114.    Throughout their marriage Garbuzov intentionally suppressed the fact that the parties were not legally married, by falsifying documents submitted in support of the I-130 Immigration Petition.

115.    All of Garbuzov's promises, communications, and acts concerning Plaintiff were knowingly false and were made with intent to deceive Plaintiff to obtain the benefit of living with Plaintiff; and obtain free labor from Plaintiff, and to avoid equitable distribution in the event of a divorce.

116.    Plaintiff has been defrauded of her spousal rights of equitable distribution.

117.    Additionally, Defendant Garbuzov and Auto Products Group coerced Anna Konstantinova to work without pay or benefits.

118.    Plaintiff has been damaged as a result of Garbuzov's fraudulent and deceitful acts in an amount to be determined at trial but not less than $2,892,540.10.

119.    **WHEREFORE**, the Plaintiff demands judgment against the Defendants, and granting the following relief:

1)    For compensatory, consequential, and punitive damages and interest;

2)    For attorney's fees and costs of suit; and

3)    For such other relief as the Court may deem appropriate in the circumstances.

## COUNT III UNJUST ENRICHMENT
### (Against all Defendants)

120.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

121.    Plaintiff rendered services to Defendants Alexander Garbuzov, Igor Myasnikov, and Auto Product Group, Inc. Plaintiff worked as a public relations executive, marketing manager, and held other roles and performed other tasks in good faith with the expectation that she would be fairly compensated for such services.

122.    Defendants accepted those services and, in turn, failed to compensate Plaintiff the reasonable and/or fair market value of her services.

123.    Defendants have benefited and unjustly enriched from these services at Plaintiff's expense, in an amount not less than $892,540.10.

124.    Defendants consciously and recklessly disregarded the Plaintiff's rights.

125.    Plaintiff should be compensated in quantum merit in an amount to be proven at trial, but not less than $892,540.10    .

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and granting the following relief:

1)    For compensatory, consequential, and punitive damages and interest;

2)    For attorney's fees and costs of suit; and

3)    For such other relief as the Court may deem appropriate in the circumstances.

### <u>COUNT IV INVOLUNRARY SERVITUDE</u>
**Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of 18 U.S.C. §§1590, 1595**
**(Against All Defendants)**

126.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

127.    Under 18 U.S.C. § 1590(a), it is unlawful to "knowingly recruit[], harbor[], transport[], provid[e], or obtain[] by any means, any person for [peonage, slavery, involuntary servitude, or forced labor]."

128.    Petrolube, Starlube, Tendemco, Inc.  and APG are a single employer because all the companies have the same owners and intermingle funds as stated in more detail above.

129.    For example, Plaintiff performed services for Starlube and Perolube, and was paid by Auto Product Group, Inc. Each of these companies had the same operations, was engaged in the same business, had common offices, common record keeping, and shared bank accounts, Common management, common directors and boards, common control of labor relations and personnel.

12

130.    Defendants knowingly recruited, transported, harbored, provided and/or obtained Anna Konstantinova, bringing her to the United States for the purpose of involuntary servitude and forced labor in violation of 18 U.S.C. §§ 1589 and 1592, and therefore violated 18 U.S.C. § 1590.

131.    Defendants knowingly violated the prohibitions against involuntary servitude and forced labor set forth in 18 U.S.C. §§ 1584(a) and 1589(a) and (b).

132.    Plaintiff brings this claim for relief pursuant to 18 U.S.C. § 1595.

133.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages in an amount to be determined at trial.

134.    Plaintiff is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and granting the following relief:

1)    For compensatory, consequential, and punitive damages and interest;

2)    For attorney's fees and costs of suit; and

3)    For such other relief as the Court may deem appropriate in the circumstances.

### COUNT V INVOLUNRARY SERVITUDE
**Benefitting Financially from Trafficking in Persons in Violation of
18 U.S.C. §§ 1593A, 1595
(Against all Defendants)**

135.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

136.    18 U.S.C. § 1593A makes it unlawful to "knowingly benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in any

activity in violation of section ... 1595(a), knowing or in reckless disregard of the fact that the venture has engaged in such violation" to the same extent "as a completed violation of such section."

137.    Defendants knowingly benefitted financially or by receiving something of value, namely Anna Konstantinova's public relations and marketing services, from participation in a venture that engaged in activities in violation of 18 U.S.C. § 1595(a) and either knew or was in reckless disregard of the violation of this provision.

138.    Anna Konstantinova brings this claim for relief pursuant to 18 U.S.C. § 1595.

139.    As a direct and proximate result of the conduct of Defendants, Ms. Konstantinova has suffered injuries to her person and other damages.

140.    Ms. Konstantinova is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and granting the following relief:

1)    For compensatory, consequential, and punitive damages and interest;

2)    For attorney's fees and costs of suit; and

3)    For such other relief as the Court may deem appropriate in the circumstances.

## COUNT VI INVOLUNRARY SERVITUDE
### Attempt to Violate 18 U.S.C. §§ 1584, 1589, 1590, 1594, 1595
### (Against all Defendants)

141.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

142.    In violation of 18 U.S.C. § 1594(a), Defendants attempted to violate §§ 1584, 1589 and 1590 by bringing Anna Konstantinova to the U.S. for the purpose of involuntary

servitude and knowingly and willfully subjected Ms. Konstantinova to a condition of involuntary servitude for several years in the U.S. in violation of 18 U.S.C. § 1584, by agreeing to obtain or provide Ms. Konstantinova's services in violation of 18 U.S.C. § 1589, and by trafficking Ms. Konstantinova in violation of 18 U.S.C. § 1590.

143.    Ms. Konstantinova brings this claim for relief pursuant to 18 U.S.C. § 1595.

144.    As a direct and proximate result of the conduct of Defendants, Ms. Konstantinova has suffered injuries to her person and other damages.

145.    Ms. Konstantinova is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and granting the following relief:

1)    For compensatory, consequential, and punitive damages and interest;

2)    For attorney's fees and costs of suit; and

3)    For such other relief as the Court may deem appropriate in the circumstances.


## COUNT VII INVOLUNRARY SERVITUDE
### Conspiracy to Violate 18 U.S.C. §§ 1584, 1589, 1590, 1594, 1595
### (Against All Defendants)

146.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

147.    18 U.S.C. § 1594(b) makes it unlawful to "conspire[] with another to violate section ... 1589, [or] 1590."

148.    Defendants conspired to violate 18 U.S.C. §§ 1589 and 1590 by agreeing to obtain or provide Ms. Konstantinova's services in violation of 18 U.S.C. § 1589, and trafficking

Ms. Konstantinova in violation of 18 U.S.C. § 1590. Defendants came to an understanding to commit these violations through the course of their dealings.

149.     Ms. Konstantinova brings this claim for relief pursuant to 18 U.S.C. § 1595.

150.     As a direct and proximate result of the conduct of Defendants, Ms. Konstantinova has suffered injuries to her person and other damages.

151.     Ms. Konstantinova is entitled to recover compensatory and punitive damages in an amount to be determined at trial, as well as attorneys' fees and costs.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and granting the following relief:

1)     For compensatory, consequential, and punitive damages and interest;

2)     For attorney's fees and costs of suit; and

3)     For such other relief as the Court may deem appropriate in the circumstances.

## COUNT VIII QUANTUM MERUIT
### (Against All Defendants)

152.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

153.     Plaintiff rendered services as a public relations executive, and marketing manager for Defendants with the expectation that she would be fairly compensated for such services.

154.     Defendants accepted those services and in turn failed to compensate Plaintiff for the reasonable and/or fair market value of her services.

155.     Defendants have benefited from these services at Plaintiff's expense.

156.    Defendants consciously and recklessly disregarded the Plaintiff's rights.

157.    Plaintiff should be compensated in quantum meruit in an amount to be proven at trial.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and granting the following relief:

1)    For compensatory, consequential, and punitive damages and interest;

2)    For attorney's fees and costs of suit; and

3)    For such other relief as the Court may deem appropriate in the circumstances.

## COUNT XI BREACH OF CONTRACT
**(Against All Defendants)**

158.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

159.    Plaintiff and Defendants entered into an oral agreement, whereby Plaintiff agreed to work for Defendants, and Defendants agreed to fairly compensate Plaintiff in exchange for half of Defendant Garbuzov's share in the Defendant Companies among other promises.

160.    Plaintiff adequately performed her obligations under the oral agreement.

161.    Defendants breached the terms of the Parties' oral contract by failing to compensate her.

162.    Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants, and granting the following relief:

1)    For compensatory, consequential, and punitive damages and interest;

2)      For attorney's fees and costs of suit; and

3)      For such other relief as the Court may deem appropriate in the circumstances.

Dated: New York, New York
          May 25th, 2022

                                                    SHPIGEL LAW, P.C.
                                                    Attorneys for Plaintiff


                                                    By: /s/ Irina Shpigel
                                                    IRINA SHPIGEL, ESQ.



                                                    LAW OFFICES OF SARAH KIM, LLC
                                                    Attorneys for Plaintiff (Local Counsel)

                                                    By: _/s/ H. Sarah Kim_____
                                                    H. SARAH KIM, ESQ.