## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ANNA KONSTANTINOVA,

        Plaintiff,

   v.

ALEXANDER GARBUZOV, IGOR
MYASNIKOV, AUTO PRODUCT GROUP,
INC.

        Defendants.

Civ. No. 2:21-cv-12795 (WJM)

OPINION

In this action for fraud, breach of contract, and violations of the Trafficking Victims Protection Act, Defendant Igor Myasnikov ("Defendant" or "Myasnikov") moves to dismiss the Revised Second Amended Complaint ("SAC") against him pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. ECF No. 54. The Court decides this motion without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, Myasnikov's motion to dismiss is **granted**. The claims against Myasnikov are **dismissed with prejudice.**

## I.    BACKGROUND

On December 13, 2021, this Court granted Myasnikov's first motion to dismiss federal trafficking and state law claims against him in the First Amended Complaint ("FAC") because Plaintiff Anna Konstantinova ("Plaintiff") had failed to allege facts to support her claims against Myasnikov; however, the Court also granted Plaintiff's request for the opportunity to cure the deficiencies discussed in its ruling. *See* December 13, 2021 Op. and Order ("Dismissal Opinion"), ECF No. 36. Accordingly, on January 21, 2022, Plaintiff filed an initial Second Amended Complaint, ECF No. 43, which was revised and filed on May 25, 2022.[1] ECF No. 83. Counts I and II of the SAC contain allegations against only Garbuzov: 1) fraud in the inducement and misrepresentation; and 2) common law fraud. The remaining seven counts, which are the same causes of action contained in the FAC, are alleged against all Defendants: 3) unjust enrichment (Count

---

[1] The Revised Second Amended Complaint was filed after Plaintiff agreed to withdraw the addition of Defendants' other companies as parties to the action and Myasnikov and APG agreed to withdraw their motion to strike. Consent Order, ECF No. 82.

III); 4) trafficking with respect to peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. §§ 1590, 1595 (Count IV); 5) benefitting financially from trafficking in violation of 18 U.S.C. §§ 1593A, 1595 (Count V); 6) attempt to violate 18 U.S.C. §§ 1584, 1589, 1590, 1594, 1595 (Count VI); 7) conspiracy to violate 18 U.S.C. §§ 1584, 1589, 1590, 1594, 1595 (Count VII); 8) quantum meruit (Count VIII); and 9) breach of contract (Count XI). Myasnikov now moves to dismiss all claims in the SAC against him.

The facts of this case are provided in further detail in the Court's Dismissal Opinion and need not be reiterated here. ECF No. 36. However, to the extent that the SAC contains newly pled or pertinent facts to the motion currently before the Court, those are set forth below.

While Plaintiff was living in Moscow and working as the national public relations manager for the Russian Media Group, purportedly Russia's largest media holding company, she met Alexander Garbuzov ("Garbuzov") and married him on November 6, 2008 although unbeknownst to her, he was not yet legally divorced. SAC, ¶¶ 22-31. After the wedding ceremony, Garbuzov and his business partner, Myasnikov, asked Plaintiff to leave her job with Russian Media Group to work for their companies, OOO Petrolube ("Petrolube"), Tendemco, Inc. ("Tendemco"), and Auto Products Group, Inc. ("APG") (collectively "the Companies," which at the time operated as one company), and offered her shares. *Id.* at ¶ 36. Garbuzov and Myasnikov are the sole shareholders of APG, a New Jersey company. *Id.* at ¶ 40. Petrolube is a subsidiary of Tendemco, a Delaware corporation. *Id.* at ¶ 38. Plaintiff believes Starlube is a subsidiary of Petrolube. *Id.* at ¶ 50. The Companies purportedly have common offices, staff, record keeping, bank accounts, equipment, control of labor relations, and also share common ownership and intermingle funds. *Id.* at ¶ 41, 51.

On about June 2009, Plaintiff began working "officially" for Petrolube and after September 8, 2009, started working full time on marketing, public relations, and advertisement for the Companies. *Id.* at ¶¶ 38, 42. Due to her marketing and promotional success, the Companies grew "exponentially." *Id.* at ¶¶ 49, 52. Garbuzov and Myasnikov did not pay Plaintiff a salary for her work but told her that because of her marriage to Garbuzov, she was a shareholder and would be entitled to future distributions. *Id.* at ¶ 43. Had Plaintiff known she was not legally married to Garbuzov, she would not have "devoted her time and energy to" Garbuzov and Myasnikov's businesses. *Id.* at ¶ 5. In 2011, Garbuzov and Myasnikov, using funds from APG, opened several real estate holding companies (of which Plaintiff was offered shares), bought real estate, and invested in other businesses. *Id.* at ¶¶ 63, 67-71.

Plaintiff claims Garbuzov physically abused her and controlled all family finances including any nominal salary she may have received. *Id.* at ¶¶ 46, 73. When Plaintiff complained to Myasnikov, he gave her a company credit card to use for expenses. *Id.* at ¶

47. Plaintiff left Garbuzov in 2015 and when she contacted Myasnikov for her share of the companies, he gave her a $4,000 check and advised her she would not receive anything because her marriage was invalid. *Id.* at ¶ 80.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.,* 542 F.3d 59, 64 (3d Cir. 2008). This assumption of truth is, however, inapplicable to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). That is, although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). While "[t]he plausibility standard is not akin to a probability requirement ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

### B.   Counts IV – IX (Trafficking Victims Protection Reauthorization Act ("TVPRA"))

Plaintiff seeks civil remedy from Defendants pursuant to 18 U.S.C. § 1595 for trafficking her into forced labor in violation of § 1590, forced labor in violation of § 1589, involuntary servitude in violation of § 1984, destroying immigration documents in violation of § 1592 and sex trafficking by fraud in violation of § 1591.[2]

#### 1.   Count IV (18 U.S.C. §§ 1590, 1595)

Section 1590 prohibits makes it unlawful to "knowingly recruit[], harbor[], transport[], provide[], or obtain[] by any means, any person for labor or services in

---

[2] Section 1595(a) authorizes monetary damages against "the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . ." 18 U.S.C. § 1595(a).

violation of this chapter." 18 U.S.C. § 1590(a). "A Section 1590 claim is derivative—i.e., it 'depends on a predicate TVPRA offense—such as forced labor.'" *Mallela v. Cogent Infotech Corp.*, No. 19-01658, 2020 WL 2541860, at *3 (W.D. Pa. May 19, 2020) (citation omitted). As discussed below, Plaintiff fails to establish a *prima facie* case for violation of § 1590(a) by Myasnikov; the SAC does not cure the deficiencies of the FAC as it fails to set forth facts that plausibly establish predicate violations of 18 U.S.C. §§ 1589(a) and (b), 1584(a), or 1592.

#### a.  Forced Labor (18 U.S.C. § 1589(a))

Civil liability for forced labor requires a finding that the defendant "knowingly provide[d] or obtain[ed] the labor or services of a person" by any of the following means:

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, …

18 U.S.C. § 1589(a). Plaintiff insists that in violation of this section, Myaskinov and Garbuzov engaged in bait-and-switch tactics to trick her into working for APG by offering dividends and distributions and then withholding compensation. Additionally, Plaintiff alleges that Myasnikov knew that Plaintiff's marriage was invalid and deliberately hid that fact. SAC, ¶ 6. Assuming these assertions to be true, they do not show that Myasnikov knowingly pressured Plaintiff to leave her job with Russian Media Group and work without compensation for APG *by means of* force, threat of force, physical restraint, threat of physical restraint, abuse or threatened abuse of law or legal process as prohibited by (1) and (3). *Compare with Martinez-Rodriguez v. Giles*, 31 F.4th 1139 (9th Cir. 2022) (concluding jury could find violation of § 1589(a)(3) in bait-and-switch where defendant enticed plaintiffs to journey from Mexico to work as "Animal Scientists" only to be required to perform substantial volume of menial work under threat of deportation); *United States v. Dann*, 652 F.3d 1160 (9th Cir. 2011) (upholding conviction for forced labor where plaintiff was enticed to come work in U.S. as nanny and housekeeper, but thereafter, defendant kept her passport, forced her to work without pay in "slave-like conditions" and threatened deportation and financial harm).

Additionally, Plaintiff's allegations also fail to show that Myaskinov employed threats of "serious harm,"[3] to obtain forced labor in violation of subsection (2). While Plaintiff concludes she was "made to understand" and "implicitly threatened" that she would be cut off from financial resources unless she continued to work for Defendants, she provides no factual basis for that conclusion. That Plaintiff had no other source of income (and thus entirely financially reliant on Defendants) and had no contacts or family in the United States, [4] *see* Pl.'s Omnibus Opp'n Br. at 10-12, ECF No. 64, are circumstances that do not necessarily evidence violations of anti-trafficking laws. To the contrary, rather than threatening financial harm, Myasnikov gave Plaintiff a company credit card to pay her expenses and $4,000. SAC, ¶¶ 49, 83. The only specific "threat" that Plaintiff attributes to Myasnikov is his "advice" to her that she would not receive compensation if she left Garbuzov. *Id.* at ¶ 83. That statement, however, pertains to staying in the marriage rather than providing free labor for APG, and in any event, was made after Plaintiff had already left Garbuzov and moved to New York.

Lastly, subsection (4) requires that Myasnikov *intended* Plaintiff to believe that if she did not work for free, she would "suffer serious harm or physical restraint." There is no such allegation against Myasnikov. Any claim that Plaintiff was restrained from leaving her job due to physical abuse or fear of financial harm involve allegations of physical abuse and control of finances by Garbuzov, not Myasnikov. *See id.,* at ¶¶ 49, 75, 76. The allegations contained in the SAC, without any factual support, are conclusory statements that are an insufficient basis to state a claim of forced labor.

### b. Financial Benefit (18 U.S.C. § 1589(b))

Civil liability arises under 18 U.S.C. § 1589(b) when a defendant "knowingly benefits, financially or by receiving anything of value, *from participation* in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means." 18 U.S.C. § 1589(b) (emphasis added).

To support the claim that Myasnikov violated § 1589, Plaintiff cites *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017). In *Ricchio*, the First Circuit reversed the dismissal of § 1589(b) violation claims against owners of the motel where the plaintiff had been held captive because the captor's "coercive and abusive treatment" of the plaintiff as a sex slave was not only "apparent" to the motel owners, but the captor and motel owners

---

[3] "Serious harm" is defined as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C.A. § 1589(c)(2).

[4] Although Plaintiff contends in her opposition brief that she did not speak English, that is not pled anywhere in the SAC.

had exchanged "high-fives in the motel's parking lot while speaking about 'getting this thing going again.'" *Id.* at 555. The motel owners had "nonchalantly ignored [the plaintiff's] plea for help in escaping from [the captor's] custody at the motel," and had shown "indifference" to the plaintiff's "obvious physical deterioration." *Id.* Thus, the court found that the motel owners' association with the captor constituted participation in a "venture" and that the owners acted at least in reckless disregard of that venture. *Id.* at 556.

Here, in contrast to *Ricchio,* although Plaintiff contends that she informed Myasnikov of Garbuzov's physical abuse, her pleading only summarily provides that she "complained" to Myasnikov without specifying what those complaints were, *see* SAC, ¶ 50, and surmises, without factual support, that Myasnikov "exploited" her and "hid" the invalidity of her marriage, *see id.* at ¶ 6. Plaintiff pleads no facts that demonstrate that any financial benefits that APG may have received from Plaintiff's work were from Myasnikov's *participation* in an illegal venture, *see* discussion *supra;* 18 U.S.C. § 1591(e)(3) (defining "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation" of sex trafficking). Plaintiff has not established a *prima facie* claim against Myasnikov for violation of § 1589(b).

### c.  Involuntary Servitude (18 U.S.C. § 1584)

Section 1584(a) subjects to punishment anyone who "knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term, or brings within the United States any person so held." 18 U.S.C.A. § 1584. Plaintiff fails to plead any facts that show that Myasnikov knowingly or willfully held Plaintiff to "involuntary servitude," that is, obtained forced labor from Plaintiff through the use or threatened use of physical or legal coercion. *See United States v. Kozminski,* 487 U.S. 931, 948 (1988) ("involuntary servitude," borrowed from the Thirteenth Amendment, "should be limited to cases involving the compulsion of services by the use or threatened use of physical or legal coercion.").

### d.  Destroying Immigration Documents (18 U.S.C. § 1592)

Plaintiff alleges that Myasnikov violated § 1592, which makes it unlawful to "knowingly destroy[], conceal[], remove[], confiscate[], or possess[] any actual or purported passport or other immigration document" of another person in the course of violating or intending to violate various other sections in the 2008 amendment to the TVPRA. 18 U.S.C. § 1592(a). The SAC contains *no* facts that show that Myasnikov had anything to do with Plaintiff's immigration documents in violation of § 1592.

### e.  Sex Trafficking by Force, Fraud, or Coercion (18 U.S.C. § 1591)

Section 1591 provides in relevant part:

Whoever knowingly -- (1) in or affecting interstate or foreign commerce ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits ... a person ... knowing, or ... in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, ... shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). "'[C]ommercial sex act' means any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C.A. § 1591(e)(3).

Although Plaintiff claims in her opposition brief that she has properly alleged violations of 18 U.S.C. § 1591, the current operative pleading only contains two cursory references to § 1591 in the "preliminary statement," *see* SAC ¶¶ 2, 4, and does not plead in any of the counts a claim for sex trafficking by fraud or state a demand for the relief sought. *See* Fed. R. Civ. P. 8(a). Even assuming that there is no pleading deficiency and that Plaintiff's uncompensated marketing work for APG and invalid marriage constitute a "commercial sex act," Plaintiff's specific factual allegations in support of her sex trafficking by fraud claims are only against Garbuzov: Garbuzov lied to Plaintiff about his divorce, falsified the marriage certificate, submitted immigration documents with false information, and "enjoy[ed] the physical consequences of the marriage." SAC, ¶¶ 26, 29, 61-64; *see* Pl.'s Omnibus Opp'n Br. at 14-16. Allegations that Myasnikov knew that the marriage was a sham and knew Plaintiff was not receiving a salary are insufficient to state a facially plausible claim for sex trafficking by fraud against Myasnikov. Count IV against Defendant Myasnikov is **dismissed with prejudice**.

### 2. Count V (Benefitting Financially from Trafficking in Violation of 18 U.S.C. § 1593A, 1595)

Section 1593A punishes anyone who "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of this chapter, knowing or in reckless disregard of the fact that the venture has engaged in such violation . . ." 18 U.S.C.A. § 1593A. Taking as true that Myasnikov knew that Plaintiff's marriage was void and as co-owner of APG, knowingly benefitted from Plaintiff's unpaid employment, apart from unsupported conclusory assertions, Plaintiff has not alleged any facts from which to infer that Myasnikov *participated* in a venture with Grabuzov to engage Plaintiff in forced labor or involuntary servitude by means of force, serious harm, or threats, or that he benefitted from such a venture knowing or in reckless disregard of any violation of trafficking laws. *See* discussion *supra,* II.B.1. Count V against Myasnikov is **dismissed with prejudice**.

3. Count VI (Attempt to Violate 18 U.S.C. § 1584, 1589, 1590, 1594, 1595), Count VII (Conspiracy to Violate 18 U.S.C. § 1584, 1589, 1590, 1594, 1595)

Plaintiff maintains that Defendants contravened § 1594(a) and (b) by attempting and conspiring to bring her to the United States for the purpose of involuntary servitude and forced labor in violation of §§ 1584, 1589 and trafficking in violation of § 1590. Claims that Myasnikov attempted and conspired to violate §§ 1584, 1589, 1590, or 1595 cannot succeed as a matter of law given the Court's determination that Plaintiff has not stated a claim for violation of the predicate charges. *See* discussion *supra*, II.B.1. Counts VI and VII against Myasnikov are **dismissed with prejudice**.

C. Count III (Unjust Enrichment), Count VIII (Quantum Meruit)

Plaintiff claims in Count III that it would be inequitable to allow Defendants to reap the benefit of Plaintiff's labors without paying for it. The Court previously dismissed without prejudice Plaintiff's unjust enrichment and quantum meruit claims reasoning that since Myasnikov was not her direct employer, claims regarding non-payment for work were proper only against APG and that there was no basis to pierce the corporate veil to hold Myasnikov personally liable for APG's failure to compensate Plaintiff. December 13, 2021 Op. and Order, at 9-10. To cure that deficiency, Plaintiff contends that Myasnikov and Garbuzov "jointly opened several real estate holding companies, using funds from APG [ ] accounts," "invested money into other business[es]," and also purchased personal property with funds from APG. SAC, ¶¶ 70-74. Thus, Plaintiff posits that Defendants "disregarded the corporate form by [sic] did not follow corporate formalities, fraudulently induced plaintiff into working for the companies without compensation, and intermingledf [sic] corporate and personal affairs." *Id.* at ¶ 69.

In New Jersey, piercing the corporate veil involves a two-step inquiry: "first, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 425 (D.N.J. 2019) (citing *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 679 (D.N.J. 2009)); *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988). Under the first prong, the extent to which the individual must exercise control over the corporate form to warrant piercing the corporate veil requires "'complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own.'" *Craig*, 843 F.2d at 150 (citing 1 Fletcher's, supra, § 43, at 490). The Third Circuit has identified six factors that courts may consider in determining whether such a unity of interest and ownership exists:

> [1] gross undercapitalization ...; [2] the failure to observe corporate formalities, non-payment of dividends, [3] the insolvency of the debtor corporation at the time, [4] siphoning of funds of the corporation by the dominant stockholder, [5] non-functioning of other officers or directors, absence of corporate records, and [6] the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*Id.* (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (citations omitted)). Only if there is a finding of dominance, does the court reach the second question of whether the individual has abused the privilege of incorporation by using the corporation to perpetrate fraud or injustice. *Craig*, 843 F.2d at 150 (citing *Ventron*, 94 N.J. at 501). "With respect to the second element, a plaintiff need not prove common law fraud but instead demonstrate that the defendants, *via* the corporate form, perpetrated 'a fraud, injustice, or the like,' a less exacting standard." *Linus Holding Corp.*, 376 F. Supp.3d at 425 (citing *The Mall at IV Group Properties, LLC v. Roberts*, No. 02-4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005)).

To show unity of interest and ownership, Plaintiff's only factual allegation pled in the SAC is that Myasnikov and Garbuzov used APG funds to open real estate holding companies, purchase property, and invest in other businesses.[5] That is simply not sufficient to demonstrate unity of interest and ownership between Myasnikov and APG. *See Preferred Real Estate Investments, LLC v. Lucent Tech., Inc.*, No. 07-5374, 2009 WL 1748954, at *4 (D.N.J. June 19, 2009) (granting motion to dismiss and declining to pierce corporate veil where principals' use of personal funds to facilitate entity's purchase of the property did not "rise to the level of intermingling of funds" and "may simply be an investment"). Moreover, Plaintiff has not set forth any facts that demonstrate that the corporate entities were incorporated for the sole purpose of defrauding others or that Myasnikov perpetrated fraud *via* the corporate form. *See State Capital Title & Abstract Co. v. Pappas Business Servs., LLC*, 646 F. Supp.2d 668, 680 (D.N.J. 2009). Drawing all reasonable inferences in Plaintiff's favor, Plaintiff's allegations do not support a claim for personal liability against Myasnikov for unpaid wages. Count III for unjust enrichment and Count IV for quantum meruit against Defendant Myasnikov are **dismissed with prejudice**.

### D. Count IX (Breach of Contract)

Plaintiff asserts that she and Defendants entered into an oral agreement in which she was to receive half of Garbuzov's share of APG as compensation for her services. Notably, the SAC does not expressly indicate whether Myasnikov entered into such an alleged agreement in his individual capacity or on behalf of APG. However, Plaintiff

---

[5] Plaintiff's contention that the Companies shared common resources with each other does not pertain to whether Myasnikov intermingled his personal finances and dominated the Companies.

posits in her brief that the oral agreement was "breached personally" by all Defendants. To the extent that Myasnikov, in his individual capacity, promised her a portion of Garbuzov's shares, that contract is not valid or enforceable against Myasnikov. There is no mutual consideration; Myasnikov cannot promise to give away shares that do not belong to him. Insofar as Plaintiff alleges Myasnikov is personally liable for breach of a corporate contract under a piercing of the corporate veil theory, as discussed above, Plaintiff has not pled any facts to plausibly support that theory. Count IX is **dismissed with prejudice.**

## III.   CONCLUSION

For the reasons noted above, Defendant Myasnikov's motion to dismiss is **granted**. Counts III – IX of Plaintiff's First Amended Complaint are **dismissed with prejudice** as to Defendant Myasnikov.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

Date: June 14, 2022